**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

NOVACLOUD LICENSING LLC,

      Plaintiff,

   v.

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS
OPERATING, LLC, SPECTRUM
MANAGEMENT HOLDING COMPANY,
LLC, SPECTRUM GULF COAST, LLC,
AND CHARTER COMMUNICATIONS,
LLC,

      Defendants.

Civil Action No. 2:25-cv-01266-JRG-RSP

**MOTION TO DISMISS FOR IMPROPER VENUE UNDER RULE 12(B)(3),
OR, ALTERNATIVELY, TRANSFER UNDER 28 U.S.C. § 1404(A), AND
<u>MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.    STATEMENT OF THE ISSUES........................................................................................... 2

III.    STATEMENT OF THE FACTS ......................................................................................... 3

    A.    NovaCloud's Allegations................................................................................................ 3

        1.    Venue ........................................................................................................................ 3

        2.    Induced and contributory infringement allegations .................................................. 4

    B.    The Accused Instrumentalities...................................................................................... 5

    C.    Defendants' Corporate Structure ................................................................................... 5

    D.    NovaCloud Does Not Allege It Has Any Connection to This District............................... 6

    E.    CCI, CCO, CCL, and SMHC Do Not Reside in Texas and CCI, CCO, and SMHC Have No Presence in Texas...................................................................................................... 6

    F.    No Evidence is Located in This District and Only One Third-Party Witness is Located in This District ............................................................................................................... 7

IV.    ARGUMENT.................................................................................................................... 9

    A.    The Complaint Should Be Dismissed as to CCI, CCO, CCL, and SMHC for Lack of Proper Venue .................................................................................................................. 9

        1.    CCI, CCO, CCL, and SMHC do not have a physical place of business in this district 10

        2.    CCI, CCO, and SMHC have no employees conducting business in this district.......... 10

        3.    CCL's employment of personnel conducting business in this District does not make venue proper as to CCL ......................................................................................... 12

        4.    Operations of SGC and CCL cannot be imputed onto any other defendant................. 13

    B.    If the Court Denies Defendants' Motion to Dismiss the Complaint Against CCI, CCO, CCL, and SMHC For Improper Venue, the Case Should Be Transferred to the District of Colorado.................................................................................................................. 16

        1.    NovaCloud Could Have Brought This Case in the District of Colorado..................... 17

        2.    Private Interest Factors Favor Transfer to the District of Colorado ........................... 19

i

(a)   The Convenience for and Cost of Attendance for Willing Witnesses Heavily Favors Transfer to the District of Colorado ...................................................................................... 19

(b)   Availability Of Compulsory Process Favors Transfer ............................................. 21

(c)   Ease of Access to Sources of Proof Strongly Favors Transfer ................................. 23

(d)   There Are No Practical Problems With Transferring This Case .............................. 24

(e)   NovaCloud Lacks Any Meaningful Connection to This District ............................. 24

3.   The Public Interest Factors Also Weigh in Favor Of Transfer .................................... 25

(a)   Court Congestion Does Not Weigh Against Transfer .............................................. 25

(b)   The District of Colorado Has a Strong Local Interest in This Dispute .................... 26

(c)   The Factors Considering Familiarity with Governing Law and Potential Conflicts of Law are Neutral ............................................................................................................... 27

C.   NovaCloud's Induced Infringement Claims for Each of The Asserted Patents Should Be Dismissed Because NovaCloud Fails to Adequately Plead a Specific Intent To Induce Infringement .............................................................................................................................. 27

D.   NovaCloud's Contributory Infringement Claims for Each of The Asserted Patents Should Be Dismissed Because NovaCloud Fails To Plead "No Substantial Non-Infringing Use" ...... 29

V.   CONCLUSION ..................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) ................................................................................. 22

*Andra Grp., L.P. v. Victoria's Secret Stores, LLC.*,
  6 F.4th 1283 (Fed. Cir. 2021) ....................................................................................... 11, 14

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 29, 2018) ........................ 16

*Blue Spike, LLC v. Caterpillar, Inc.*,
  No. 6:16-CV-1361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017) ............................... 14

*Blue Spike, LLC v. Nook Dig., LLC,*
  No. 6:16-CV-1361-RWS-JDL, 2017 WL 3263871 (E.D. Tex. July 28, 2017) ........................ 14

*Celgene Corp. v. Mylan Pharmaceuticals Inc.*,
  17 F.4th 1111 (Fed. Cir. 2021) ..................................................................................... 14, 15

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  No. 6:13-CV-507, 2015 WL 11118110 (E.D. Tex. Mar. 27, 2015) ......................................... 29

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321, 1326 (Fed. Cir. 2010) ................................................................................. 29

*Greiner v. Am. Motor Sales Corp.*,
  645 F. Supp. 277 (E.D. Tex. 1986) ................................................................................ 24, 25

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) ..................................................................................... 21

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ......................................................................................... 23

*In re Charter Commc'ns, Inc.,*
  2023-136, 2023 WL 5688812 (Fed. Cir. Sept. 5, 2023) ...................................................... n.6

*In re Charter Commc'ns, Inc.,*
  2024-136, 2024 WL 3320354 (Fed. Cir. July 8, 2024) ....................................................... n.7

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ................................................................................ 9, 10, 12

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..................................................................................... 19, 25

*In re Google LLC,*
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................................. 23

*In re Google LLC,*
949 F.3d 1338 (Fed. Cir. 2020)................................................................... 10, 11, 12, 13

*In re Hoffmann-La Roche Inc.,*
587 F.3d 1333 (Fed. Cir. 2008)............................................................................. 22, 26

*In re Juniper Networks, Inc.,*
14 F.4th 1313 (Fed. Cir. 2021) ..................................................................................... 25

*In re Samsung Elecs. Co., Ltd.,*
2 F.4th 1371 (Fed. Cir. 2021) ....................................................................................... 26

*In re TikTok, Inc.,*
85 F.4th 352 (5th Cir. 2023) ................................................................................ 16, 19, 21

*In re Tracfone Wireless, Inc.,*
852 F. App'x 537 (Fed. Cir. 2021) .................................................................................. 21

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ........................................................................... 17, 20, 27

*In re Volkswagen Grp. of Am., Inc.,*
28 F.4th 1203 (Fed. Cir. 2022) ...................................................................................... 12

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) ............................................................................... *passim*

*In re ZTE (USA) Inc.,*
890 F.3d 1008 (Fed. Cir. 2018)........................................................................................ 9

*Kranos IP Corp. v. Riddell, Inc.,*
No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017)..................................... 9

*Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.,*
No. 6:19-CV-00059-RWS, 2020 WL 6803249 (E.D. Tex. Jan. 14, 2020)............................... 29

*Meyer v. Holley,*
537 U.S. 280 (2003)....................................................................................................... 11

*Mullen Indus. LLC v. Samsung Elecs. Co.,*
No. 2:24-CV-00049-JRG, 2025 WL 1658927 (E.D. Tex. June 11, 2025) ............................... 27

*Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*,
  19-cv-00721, 2020 WL 42889388 (W.D. Tex. July 27, 2020)................................. 14

*Optimum Imaging Techs. LLC v. Sony Corp.*,
  Civil Action No. 4:23-cv-928, 2025 WL 904380 (E.D. Tex. Mar. 25, 2025) .......................... 25

*Orinda Intell. Props. USA Holding Grp., Inc. v. Sony Corp.*,
  No. 2:08-CV-323, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009)........................................... 27

*Potter v. Cardinal Health 200, LLC*,
  No. 2:19-cv-00007, 2019 WL 2150923 (E.D. Tex. May 16, 2019) ........................................ 22

*R2 Sols. LLV v. Databricks Inc.*,
  Civil Action No. 4:23-CV-1147, 2024 WL 4932719 (E.D. Tex. Dec. 2, 2024)....................... 24

*Soverain IP, LLC v. AT&T, Inc.*,
  No. 2:17-CV-00293-RWS, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ............................. 16

*SQIP, LLC v. Cambria Co., LLC*,
  728 F. Supp. 3d 447 (E.D. Tex. 2024)...................................................................................... 24

*Stragent, LLC v. BMW of N. Am., LLC*,
  No. 6:16-CV-446-RWS-KNM, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)........................ 28

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  581 U.S. 258 (2017).................................................................................................................. 9

*TransFirst Grp., Inc. v. Magliarditi*,
  237 F. Supp. 3d 444 (N.D. Tex. 2017) .................................................................................... 25

*Uniloc 2017 LLC v. Google LLC*,
  Case No. 2:18-cv-00504-JRG-RSP, 2020 WL 3064460 (E.D. Tex. June 8, 2020).................. 23

*Vega v. Maxim Integrated Prods., Inc.*,
  No. 5:15-CV-1138-DAE, 2016 WL 9450607 (W.D. Tex. June 14, 2016)............................. n.4

**Statutes**
28 U.S.C. § 1400............................................................................................................................. 9
28 U.S.C. § 1404........................................................................................................................... 16
35 U.S.C. § 271............................................................................................................................. 29

**Other Authorities**
Del. Code Ann. tit. 6, § 18–402 ................................................................................................... 15
Restatement (Third) of Agency § 1.01 ........................................................................................ 11

**Rules**
Fed. R. Civ. P. 45......................................................................................................................... 22

v

## I.    INTRODUCTION

Defendants CCI, CCO, CCL, and SMHC are not Texas corporations and have no physical presence in this District or anywhere else in Texas.[1] NovaCloud should not have filed this action against them here, and it should not proceed here because venue is improper as to each of these entities. Venue is proper for this patent infringement action for these entities only if they: (1) are incorporated in Texas; or (2) have a regular and established place of business here. Neither are true. Although the Complaint alleges that they have a "regular and established places of business" at four locations in this District, those sites are leased and operated by *SGC*, one of CCI's separate and distinct subsidiaries; and SGC's activities in this District cannot be imputed to CCI, CCO, CCL or SMHC. The Complaint should therefore be dismissed for lack of venue as to CCI, CCO, CCL, and SMHC.

The Court previously ruled that venue was proper for these entities because CCI and its subsidiaries, including SGC, act as a single enterprise branded as "Spectrum." If the Court again relies on similar reasoning to deny the present motion to dismiss, it should alternatively transfer the case to Colorado. If all defendants can be sued in Texas based on SGC's presence in Texas and lack of corporate separateness, then, by the same logic, all defendants can be sued in Colorado based on their far greater presence in Colorado. Colorado is therefore an available transferee forum, and the transfer factors strongly favor transfer:  the overwhelming majority of Defendants' potential witnesses reside in and work in Colorado, and the bulk of the evidence and relevant sources of proof are located there. NovaCloud, by contrast, resides in California—not Texas—and the public record reveals that there are no third party witnesses within this Court's absolute subpoena power. The private-interest factors weigh heavily in favor of transfer.

---

[1] Terms are defined in subsequent sections.

The public factors do as well. The District of Colorado has a strong local interest in this case because Defendants and their employees have a significant presence in Colorado, where they design and maintain the Accused Instrumentalities. On the other hand, this District has no interest in NovaCloud, which is here for the sole purpose of forum shopping.

Finally, the Court should also dismiss (a) NovaCloud's induced infringement claim for each of the Asserted Patents because NovaCloud fails to adequately plead facts showing a specific intent to induce infringement and (b) NovaCloud's contributory claim for each of the Asserted Patents because NovaCloud fails to adequately plead that the Accused Instrumentalities have no substantial non-infringing use.

## II.    STATEMENT OF THE ISSUES

Pursuant to Local Civil Rule CV-7(a)(1), the issues to be decided by the Court are:

(1) Whether the Court should dismiss the Complaint as to CCI, CCO, CCL, and SMHC for improper venue under Rule 12(b)(3) because they neither reside in this District nor have regular and established places of business in this District;

(2) Alternatively, if the Court does not dismiss the Complaint as to CCI, CCO, CCL, and SMHC for improper venue, whether the Court should transfer the case with all defendants to the U.S. District Court for the District of Colorado under 28 U.S.C. § 1404(a) because Defendants could have been sued in Colorado and nearly all evidence, witnesses, and documents are located outside of this District, the majority in Colorado;

(3) Whether NovaCloud's induced and contributory infringement claims for each of the Asserted Patents should be dismissed under Rule 12(b)(6) because the Complaint fails to plausibly allege (i) the requisite knowledge and specific intent to induce infringement and (ii) that the Accused Instrumentalities lack substantial non-infringing uses.

### III.     STATEMENT OF THE FACTS

#### A.     NovaCloud's Allegations

##### 1.     Venue

NovaCloud Licensing LLC ("NovaCloud") alleges in its Complaint that Defendants Charter Communications Operating, LLC ("CCO"), Charter Communications, Inc. ("CCI"), Charter Communications, LLC ("CCL"), Spectrum Gulf Coast, LLC ("SGC"), and Spectrum Management Holding Company, LLC ("SMHC") (collectively, "Defendants") infringe U.S. Patent Nos. 8,145,721, 8,949,206, and RE47,612 (collectively, "the Asserted Patents"). Dkt 1, Complaint, ¶ 1 ("Compl."). NovaCloud alleges that Defendants "directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers" in this District. *Id.*, ¶ 20. NovaCloud further alleges that Defendants "own[] or lease[], and maintain[] and operate[] several stores in this District by and through subsidiary limited liability companies that [they] manage[] and control[], including at least Spectrum Gulf Coast LLC, and negotiate[] and sign[] agreements on Spectrum Gulf Coast's behalf," have "regular and established places of business [in this District] at: 4255-A Dowlen Rd, Beaumont, TX 77706, 3121 Edgar Brown Dr, Orange, TX 77630, 700 Alma Dr, Plano, TX, and 2100 N Dallas Pkwy, Plano, TX," and that Defendants "advertise[]" "the geographic coverage of the Spectrum networks" in this District by, for example, "Spectrum's website [which] provides a coverage map that advertises Spectrum current 5G wireless coverage in and around Marshall, Texas." *Id.*, ¶¶ 9, 22, 23. NovaCloud alleges no facts that Defendants have failed to maintain corporate separateness.

Regarding CCI, NovaCloud alleges that it "operate [sic] in 41 states with services available to more than 57 million homes and businesses in markets of all demographics and sizes." *Id.*, ¶ 8.

3

NovaCloud further alleges that in stores in this district," CCI "owns, stores, markets, and sells services or related equipment that perform the Accused Instrumentalities mentioned below." *Id*., ¶ 10. NovaCloud also alleges that CCI "is the corporate manager of its subsidiary LLCs that own or lease property in this district, that employ employees in this district, and that market, own, store, sell, and lease equipment performing the Accused Instrumentalities in this district" and that it "has the right to exercise near total control of each entity's operations through its LLC agreements with each entity." *Id*., ¶ 14.

## 2.    Induced and contributory infringement allegations

NovaCloud's induced and contributory infringement allegations are identical for all the Asserted Patents:

> Spectrum continues to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the [Asserted Patents]. Spectrum does so knowing and intending that its customers will commit these infringing acts. Spectrum also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the [Asserted Patents], thereby specifically intending for and inducing its customers to infringe the [Asserted Patents] through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities[;] providing information, education and instructions to its customers; and indemnifying patent infringement within the United States.
>
> ***
>
> Spectrum has induced, and continues to induce, infringement of the [Asserted Patents] by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused Instrumentalities; providing information, education and instructions to customers; providing the Accused Instrumentalities to customers; and indemnifying patent infringement within the United States.

Compl., ¶¶ 33, 35, 46, 48, 59, 61.

4

██████████████████

**B.    The Accused Instrumentalities**

████████████████████████████████████████

███████████████████████████████████████████████████ and by

third-party vendors. Ex. 1, Declaration of Daniel Boglioli ("Boglioli Decl."), ¶ 23.[2] The third-party

vendors that supply the equipment used in the Accused Instrumentalities identified in the

Complaint are ████████████████████████████████████

████████████████████████████████████████

██████████████████. *Id.,* ¶ 33.

**C.    Defendants' Corporate Structure**

CCI is the corporate parent of several different entities that carry out various businesses

under the Spectrum brand. Boglioli Decl., ¶ 6. CCI provides corporate oversight to those entities,

but does not conduct any commercial business with the public. *Id.* CCI observes all required

corporate formalities, maintaining separateness from its subsidiaries, including CCO, CCL,

SMHC, and SGC. *Id.,* ¶ 7. CCI regularly maintains its corporate records separate from those of its

subsidiaries and conducts meetings of its shareholders and directors separate from those

subsidiaries. *Id.* Each of CCI's subsidiaries maintains its own corporate, partnership, or limited

liability company status, identity, and structure. *Id.* CCI has not consented, contractually or

otherwise, to have CCO, SMHC, CCL, or SGC act on behalf of CCI in any capacity; none of those

entities are authorized to act as an agent of CCI, to affect the legal rights and duties of CCI, or to

enter into any contracts on behalf of CCI. *Id.,* ¶¶ 8–10, 12.

████████████████████████████████████████

---

[2] All lettered exhibits refer to the exhibits attached to the accompanying Declaration of Elizabeth A. Long in Support of Defendants' Motion to Dismiss for Improper Venue Under Rule 12(b)(3), or, Alternatively, Transfer Under 28 U.S.C. § 1404(A), and Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6).



Ex. 3. As part of this, ███████ personnel CCL provides to SGC and SPW including the ███████ of personnel. *Id.*, § 2.5.

**D.      NovaCloud Does Not Allege It Has Any Connection to This District**

NovaCloud is a Delaware limited liability company located in Palo Alto, California. Compl. ¶ 2. The Complaint does not allege that NovaCloud has property, employees, or business activities in this District. *Id.* The two named inventors of the Asserted Patents—NovaCloud founders and managing members Joe Chernesky and Bill Goldman—are the only two people listed on NovaCloud's website as "Team" and, according to their LinkedIn profiles, they are both located in California. Exs. 4–6.

**E.      CCI, CCO, CCL, and SMHC Do Not Reside in Texas and CCI, CCO, and SMHC Have No Presence in Texas**

CCI, CCO, CCL, and SMHC are not incorporated in Texas and instead are Delaware companies with places of business in either Stamford, Connecticut (CCI) or St. Louis, Missouri (CCO, SMHC, and CCL). Boglioli Decl., ¶¶ 5, 8–10, and 12. CCI, CCO, and SMHC provide no services, have no employees, do not conduct any commercial business with the public, and do not make, manufacture, sell, or offer for sale any product or service of any nature, and do not own, lease, maintain, or operate any property in this District or in Texas. *Id.*, ¶¶ 5, 8, 9, 17, and 18. CCL provides employees to SGC, but does not provide customer services, conduct commercial business with the public, make, manufacture, sell, or offer for sale any product or service of any nature, or own, lease, maintain, or operate any property in this District or in Texas. *Id.*, ¶ 10, 17; Ex. 3.

6

The four properties listed in the Complaint (Compl. ¶ 22) are not owned or leased by—and are not maintained or operated by—CCI, CCO, CCL, or SMHC. Boglioli Decl., ¶¶ 17, 36, and 37. Instead, the properties are leased and operated by SGC. *Id.*, ¶ 36 and 37. CCI, CCO, SMHC, and SGC do not have any employees at those locations. *Id.*, ¶ 17 and 38. The retail store employees at these stores are employed by CCL and provided to SGC via the ▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 38; Ex. 3. Further, neither the four properties nor any non-party personnel at those properties have information relevant to the Accused Instrumentalities. Boglioli Decl., ¶ 39.

### F. No Evidence is Located in This District and Only One Third-Party Witness is Located in This District

No design or development of the Accused Instrumentalities takes place in this District. Boglioli Decl., ¶ 23. Nor do the business, contractual relationships or procurement activities for the Accused Instrumentalities take place here. *Id.*, ¶¶ 24–29. Those functions were, and continue to be, directed and executed by employees located in six office buildings in the greater Denver area (collectively, the "Denver Campus"). *Id.*, ¶¶ 21–23.

The Denver Campus has over 4,000 CCL employees. *Id.*, ¶ 22. Non-party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ leases five of the office buildings and non-party ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ owns one of them.[3] *Id.*, ¶ 21. The Denver Campus houses Video Engineering and Video Operations and their employees who are dedicated to the use, design, development, deployment, operation and maintenance of Spectrum-brand products

---

[3] Like it does with CCO, CCL, SMHC, and SGC, CCI (1) observes all required corporate formalities, maintaining separateness from ▮▮▮▮▮▮▮▮▮▮; (2) regularly maintains its corporate records separate from ▮▮▮▮▮▮▮▮ and conducts meetings of its shareholders and directors separate from these subsidiaries; and (3) has not consented, contractually or otherwise, to have ▮▮▮▮▮▮▮▮ act on behalf of CCI in any capacity and neither ▮▮▮▮▮▮▮▮ are authorized to act as an agent of CCI, to affect the legal rights and duties of CCI, or to enter into any contracts on behalf of CCI. Boglioli Decl., ¶¶ 13 and 14. Further, ▮▮▮▮▮▮▮ maintain their respective corporate, partnership, or limited liability company status, identity, and structure. *Id.*, ¶ 7.

and services, including the Accused Instrumentalities. *Id.*, ¶¶ 22 and 23. The Denver Campus also houses the following groups with witnesses relevant to the Accused Instrumentalities: (a) the Business Development Group, responsible for the business relationships related to the Accused Instrumentalities; (b) the Legal Group, responsible for the contractual relationships related to the Accused Instrumentalities; and (c) the Procurement and Supply Chain Groups, responsible for the acquisition of the Accused Instrumentalities. *Id.*, ¶¶ 24–26.

The Marketing Analytics Group, with witnesses knowledgeable about certain financial information associated with the Accused Instrumentalities, and the Corporate Marketing Group, with witnesses knowledgeable about the marketing of the Accused Instrumentalities, are located in Stamford, Connecticut. *Id.*, ¶¶ 27 and 28.

Defendants are not aware of any of its witnesses with relevant knowledge in this District. *See id.*, ¶¶ 23–29. Defendants are also not aware of any of its relevant documents in this District. *See id.*, ¶¶ 30–32. Instead, most relevant witnesses and documents related to the above-referenced groups and functions are located in Denver, Colorado, with some in Stamford, Connecticut. *Id.*, ¶¶ 21–28, 30, and 31.

While none of the identified third parties are located in this District, two reside in the District of Colorado, within 100 miles of the courthouse: ▆▆▆ is in Englewood, CO, ▆▆▆▆ is in Denver, CO; ▆▆▆▆▆ is in New York, NY; and ▆▆▆▆▆ is located in San Jose, CA. *Id.*, ¶ 27. Exs. 7–12. While third party ▆▆▆▆▆▆ is located in Richardson, Texas, it is in the Northern District of Texas and approximately 156 miles away from Marshall. Exs. 13 and 14. Further, two of the three attorneys who prosecuted the Asserted Patents are located outside Texas, and one is located in this District but more than 100 miles from the Court. Exs. 15–18. All these

individuals will have to travel if the case is litigated in this District for trial if they voluntarily choose to testify at trial.

## IV.     ARGUMENT

### A.     The Complaint Should Be Dismissed as to CCI, CCO, CCL, and SMHC for Lack of Proper Venue

NovaCloud has the burden of establishing venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). The Court may look beyond the complaint and accept facts in the complaint "only to the extent that such facts are uncontroverted by [a] defendant's affidavit." *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017). Under 28 U.S.C. § 1400(b), venue is proper only in the district (1) in which the defendant resides (*i.e.*, its state of incorporation) or (2) where it has a regular and established place of business and has committed acts of infringement. 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262, 267–270 (2017). NovaCloud admits that CCI, CCO, and CCL are not incorporated in Texas and alleges nothing about SMHC's state of incorporation in the Complaint. Compl., ¶¶ 7, 11, and 13.[4] Therefore, CCI, CCO, CCL, and SMHC are not subject to venue in this District based on residency. To establish that venue is proper, NovaCloud must show that each defendant has a physical regular and established place of business in the district and that each has committed acts of alleged infringement in the district. *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). There are "three general requirements relevant to the inquiry: (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and

---

[4] In fact, NovaCloud does not allege *anything* specific to SMHC other than naming it as part of the collectively defined "Defendants." SMHC should be dismissed from this litigation on that basis alone, as group pleading is impermissible in patent actions. *See, e.g.*, *Vega v. Maxim Integrated Prods., Inc.*, No. 5:15-CV-1138-DAE, 2016 WL 9450607, at *3 (W.D. Tex. June 14, 2016) (dismissing complaint that alleged claims only collectively to "Defendants" and opining that allegations "appear purely speculative given the lack of particularized and individualized facts pertaining to each defendant").

9

(3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.* at 1360. Because NovaCloud cannot meet these requirements, the Complaint should be dismissed as to CCI, CCO, CCL, and SMHC.

### 1.    CCI, CCO, CCL, and SMHC do not have a physical place of business in this district

NovaCloud alleges that "Spectrum has regular and established places of business" at four locations in this District. Compl., ¶ 22. However, CCI, CCO, CCL, and SMHC do not own or lease the four properties within this District identified in the Complaint. Boglioli Decl., ¶¶ 17, 36, and 37. Instead, these four locations are leased and operated by SGC. *Id.*, ¶¶ 36 and 37. CCI, CCO, CCL, and SMHC, separately and individually, do not conduct any commercial business with the public and do not sell any products or provide any services anywhere, including in Texas, and thus do not maintain operations anywhere in this District. *Id.*, ¶¶ 5, 6, and 8–10.

### 2.    CCI, CCO, and SMHC have no employees conducting business in this district

"[A] 'regular and established place of business' requires the regular, physical presence of an employee or other agent of the defendant conducting the defendant's business at the alleged 'place of business.'" *In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020). CCI, CCO, and SMHC do not have any employees, let alone any employees in Texas. Boglioli Decl., ¶ 18. Instead, the individuals carrying out the day-to-day business operations at the four physical locations identified in the Complaint are employees of CCL. *Id.*, ¶¶ 10, 36, and 37; Ex. 3. CCI, CCO, and SMHC do not participate in the hiring or firing of CCL employees. Boglioli Decl., ¶ 18; Ex. 3.

Next, SGC is not an agent of CCI, CCO, or SMHC. An agency relationship is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." *In re Google*, 949 F.3d at 1345 (quoting

10

Restatement (Third) of Agency § 1.01). The elements of agency are: "(1) the principal's 'right to direct or control' the agent's actions, (2) 'the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf,' and (3) the 'consent by the [agent] to act.'" *Id.* (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). NovaCloud cannot satisfy any element.

As for the first element—control—NovaCloud incorrectly alleges that CCI "has the right to exercise near total control of each entity's operations through its LLC agreements with each entity." Compl., ¶ 14. The relationship between CCI and SGC is simply one between an LLC manager and a managed LLC. CCI, CCO, and SMHC do not maintain or operate the four stores that are leased by SGC in this District, nor do they participate in the hiring and firing of employees working in those stores. Boglioli Decl., ¶¶ 17, 18, 36, and 37. Further, the plain language of the management agreement between CCO and CCI explicitly contradicts NovaCloud's allegations. The CCO management agreement only allows CCI to provide ▮▮▮▮▮▮▮▮ personnel decisions or to provide ▮▮▮▮▮▮▮▮▮▮▮▮ personnel or operations or policies and procedures. Ex. 19, § 2(b)(i)-(ii). Providing advice is far different than directing an employee to do something and, further, it does not evidence the right to control an employee's actions.

Nor can NovaCloud satisfy the remaining two elements for agency: "(2) the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf, and (3) the consent by the [agent] to act." *Andra Grp., L.P. v. Victoria's Secret Stores, LLC.*, 6 F.4th 1283, 1288 (Fed. Cir. 2021) (citation omitted). There are no allegations nor any evidence that CCI or CCO have manifested consent for SGC, or employees working at the four SGC stores in this District identified in the Complaint, to act on CCI's or CCO's behalf, and there is no evidence that

11

██████████████

any entity consented to act on CCI's or CCO's behalf. Further, the SGC Agreement[5] does not contain any provision authorizing SGC to act as an agent *of CCI*. Rather, the agreement is evidence that CCI has the power under the agreement to appoint agents *of SGC*—the opposite of what NovaCloud must show. This agreement specifies that SGC's officers, who may be appointed by CCI as its Manager, ██████████████████ meaning agents *of SGC* and that their actions ███████████████ *i.e.*, SGC; but it says nothing about the reverse—SGC serving as the agent *of CCI*. Ex. 20, § 5(d)(vi). The Federal Circuit has held this evidence is "relevant" to determine whether one entity is another's agent. *See In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1212 (Fed. Cir. 2022) ("Our holding is further bolstered by—the relevant though not dispositive—consideration that the parties to the franchise agreements disclaim an agency relationship."). Because CCI and CCO have no employees or agents in the district, NovaCloud cannot, for this additional reason, meet its burden to show that venue is proper.

SMHC and CCL are merely LLC subsidiaries of CCI. Boglioli Decl., ¶¶ 9 and 10. SMHC and CCL have no agreements between each other that authorizes either to act on the other's behalf. *Id.*, ¶ 11. As such, SGC is not an agent of SMHC. *See In re Google*, 949 F.3d at 1345.

### 3. CCL's employment of personnel conducting business in this District does not make venue proper as to CCL

Although CCL has employees at the four SGC locations, CCL does not have a physical place of business in this District as required by the first *Cray* factor. Because the first *Cray* factor is not satisfied, venue is not proper. *See Cray,* 871 F.3d at 1360 ("If any statutory requirement is not satisfied, venue is improper under § 1400(b)."). Further, SGC and CCL are LLC subsidiaries of CCI. Boglioli Decl., ¶¶ 9 and 10. Like SMHC and CCL, SGC and CCL also have no agreements

---

[5] ████████████████████████████████████████████

12

between each other that authorizes either to act on the other's behalf. *Id.*, ¶ 11. Therefore, SGC is not an agent of CCL. *See In re Google*, 949 F.3d at 1345.

### 4. Operations of SGC and CCL cannot be imputed onto any other defendant

This Court has previously found in prior patent cases filed against CCI and CCO, that CCI and CCO each act as a single enterprise so that the actions of its subsidiaries in this District, including SGC and CCL, are imputed to CCI and CCO. In *Entropic Communications, LLC v. Charter Communications, Inc.*, No. 2:22-cv-0125 (E.D. Tex.), this Court denied CCI's motion to dismiss under Rule 12(b)(3) for improper venue. Ex. 22. This Court made "a factual finding that [CCI] and its subsidiaries, including [CCL and SGC], 'act as a single enterprise' so the actions of its subsidiaries are properly imputed to [CCI]" and further found "that the locations in this District are 'of the defendant' under a lack of corporate separateness theory." *Id.* at 19.[6] In *Touchstream Technologies, Inc. v. Charter Communications, Inc. et al*, No. 2:23-cv-00059 (E.D. Tex.), this Court denied CCI and CCO's motion to dismiss for improper venue. Ex. 23. The Court found that for CCI, Touchstream "established that venue is proper in this Court with respect to CCI based upon the same reasoning, and much of the same evidence, as explained by the Court in *Entropic*." *Id.* at 8. For CCO, it found that "CCO—like CCI—maintains control over Charter subsidiaries in this District—including [CCL and SGC]—such that the subsidiaries' activities are properly imputed to CCO" and that venue in this District was proper as to CCO.[7] *Id.* at 8. In both orders,

---

[6] CCI subsequently filed a petition for mandamus that was denied by the Federal Circuit on procedural grounds. *In re Charter Commc'ns, Inc.,* 2023-136, 2023 WL 5688812, at *2 (Fed. Cir. Sept. 5, 2023). The Federal Circuit found that "CCI has not shown that our intervention is necessary at this time" and that the petition did not raise "the type of broad, fundamental, and recurring legal question" or other considerations that might warrant mandamus review." *Id.* The case subsequently settled before trial so CCI was not able to appeal the order. *See Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, No. 22-cv-00125-JRG (E.D. Tex.), Dkt. 408.

[7] A subsequent petition for mandamus was denied by the Federal Circuit also on procedural grounds. *In re Charter Commc'ns, Inc.,* 2024-136, 2024 WL 3320354, at *1 (Fed. Cir. July 8,

this Court applied a "single enterprise" theory when deciding to impute the conduct of SGC and CCL to CCI and CCO. However, it did not properly consider the factors that are relevant to corporate separateness under Fifth Circuit law. *See Nat'l Steel Car Ltd. v. The Greenbrier Cos., Inc.*, 19-cv-00721, 2020 WL 4289388, at *2 (W.D. Tex. July 27, 2020) (delineating a "non-exhaustive list of factors courts may consider" when deciding whether to impute the property of a subsidiary to the parent under an alter ego theory). These findings are improper and should not be the basis to find venue here.

Applying the threshold corporate separateness inquiry, CCI, CCO, CCL, and SGC maintained corporate separateness. Under *Andra* and *Celgene Corporation v. Mylan Pharmaceuticals Inc.*, 17 F.4th 1111 (Fed. Cir. 2021), when companies "have maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Celgene,* 17 F.4th at 1125; *Blue Spike, LLC v. Nook Dig., LLC*, No. 6:16-CV-1361-RWS-JDL, 2017 WL 3263871, at *3 (E.D. Tex. July 28, 2017), *adopted by sub nom. Blue Spike, LLC v. Caterpillar, Inc.*, No. 6:16-CV-1361-RWS, 2017 WL 4129321 (E.D. Tex. Sept. 19, 2017) ("[T]he mere existence of a wholly-owned subsidiary in a judicial district does not, by itself, suffice to establish venue over the subsidiary's parent corporation.").

The Complaint refers to all Defendants as "Spectrum." Complaint at 1 and ¶¶ 22, 23. First, while services, including television and streaming services, are branded Spectrum and the "Spectrum TV App" and "Spectrum TV" trademarks are the primary brands used by CCI

---

2024). The Federal Circuit again found that CCI and CCO had not shown that the petition raised "the type of broad, fundamental, and recurring legal question or other considerations that might warrant mandamus review." *Id.* Charter did not appeal the case after a jury found that CCI, CCO, and four other CCI subsidiaries did not infringe any claims of the asserted patents. *See Touchstream Techs., Inc. v. Charter Commc'ns, Inc. et al*, No. 2:23-cv-00059 (E.D. Tex.), Dkts. 391 and 415.

14

subsidiaries to market television and streaming services, CCI, CCO, SMHC, and CCL do not provide any Spectrum brand services and therefore do not operate as Spectrum. Boglioli Decl., ¶¶ 5, 8–10, and 20. Second, while CCI subsidiaries use the Spectrum brand, the Federal Circuit made clear in *Celgene* that the fact that related companies operate under the same trade name does not preclude a finding of corporate separateness. Corporate separateness cannot be "readily brushed aside;" "alter ego is applied only if the record clearly supports disregard of the corporate fiction on grounds of fundamental equity and fairness." *Celgene,* 17 F.4th at 1127. The plaintiff in *Celgene* tried to impute the activities of a subsidiary to its parent company by pointing to their "shared marketing, branding, [] trade names" and the "interrelatedness" of defendants' entities. *Id.* at 1126. The Federal Circuit rejected the alter ego theory even where the subsidiary used the same trade name, accepted administrative support, and had a "significant economic relationship with the parent." *Id.*

The record here does not support disregarding the corporate form. CCI and its subsidiaries—CCO, CCL, SMHC, and SGC—are separate entities and observe all required corporate formalities separating them from each other. Boglioli Decl., ¶¶ 6–10, and 12. CCI conducts meetings of its shareholders and directors separate from its subsidiaries, and each of CCI's subsidiaries, in turn, maintains its own limited liability company status, identity, and structure. *Id.* Each entity is separate and distinct from each other.

Additionally, CCI, which does not own or lease any property in Texas, as corporate manager, is authorized to engage in certain conduct on behalf of SGC, and this conduct does not destroy the corporate form. *Cf.* Compl. ¶ 9. Under the LLC Act, CCI is appointed manager of various LLCs that perform separate business functions. Del. Code Ann. tit. 6, § 18–402. The SGC Agreement provides, *inter alia*, that CCI, in its role as manager, is authorized to engage in certain

15

conduct, including to elect or remove board members or to execute or endorse any contract or agreement on behalf of SGC. Ex. 20. But a managing entity is not the same as the LLC it manages simply because of a management relationship. This Court has rejected the argument that a parent/manager "controlled" its subsidiary even with frequent visits between management of the subsidiary and the parent company. *See B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-01417-JRG-RSP, 2018 WL 7140299, at *4–6 (E.D. Tex. Nov. 29, 2018), *report and recommendation adopted,* No. 2:16-cv-01417-JRG-RSP, 2019 WL 354883 (E.D. Tex. Jan. 28, 2019). CCI's interactions with SGC and CCL are consistent with corporate forms. Further, CCI, CCO, CCL, SMHC, and SGC are distinct, separate entities that observe all required corporate formalities separating them from each other. Boglioli Decl., ¶¶ 7–11; *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-CV-00293-RWS, 2017 WL 6452802, at *2 (E.D. Tex. Dec. 18, 2017) ("[F]or a 'regular and established place of business' of a subsidiary to be imputed to a corporate relative, there must be a lack of formal corporate separateness."). Therefore, SGC's ownership or leasehold interests in these four properties, or operation and maintenance of them, and CCL's employees at those properties cannot be imputed to CCI, CCO, and SMHC.

**B.      If the Court Denies Defendants' Motion to Dismiss the Complaint Against CCI, CCO, CCL, and SMHC For Improper Venue, the Case Should Be Transferred to the District of Colorado**

If the Court denies Defendants' motion to dismiss on the basis of improper venue, this Court should transfer the entire case to the District of Colorado. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); s*ee also In re TikTok, Inc.,* 85 F.4th 352, 357 (5th Cir. 2023). Courts first consider "whether a civil action 'might have been brought' in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). If this threshold is

16

satisfied, as it must if the Court denies Defendants' motion to dismiss for improper venue based on lack of corporate separateness, the district court should grant a motion to transfer venue where "the movant demonstrates that the transferee venue is clearly more convenient," taking into consideration (1) "the cost of attendance for willing witnesses"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the relative ease of access to sources of proof"; (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive"; (5) "the administrative difficulties flowing from court congestion"; (6) "the local interest in having localized interests decided at home"; (7) "the familiarity of the forum with the law that will govern the case"; and (8) "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

### 1. NovaCloud Could Have Brought This Case in the District of Colorado

If the Court finds a lack of corporate separateness between SGC and the other defendants sufficient to permit suit in this District and denies Defendants' motion to dismiss for lack of venue under the reasoning in *Entropic* and *Touchstream*, this Court should alternatively find that this case could have been brought in the District of Colorado because CCL and CCI non-party subsidiaries ██████████████ have "a regular and established place of business" in Colorado. Under this reasoning NovaCloud could have sued all five defendants in Colorado, where the relevant witnesses, documents, and other evidence relating to CCI, CCO, CCL, and SMHC and the Accused Instrumentalities are primarily located.

██████ does in Colorado, what SGC does in Texas. It sells Spectrum-branded products, and leases and operates four customer-facing retail stores in the District of Colorado that display the "Spectrum" logo. Boglioli Decl., ¶¶ 15, 16, Exs. 24–27. This Court found these Spectrum stores in *Entropic* were "physical, geographical location[s] in the district from which the business of the [Charter] is carried out" to satisfy the first *Cray* factor for venue under § 1400(b). CCL provides

17

the employees who work at the ███ stores in the District of Colorado just as it does for the SGC stores operated in Texas. Boglioli Decl., ¶ 10; Ex. 3. Likewise, the CCL employees at the ███ stores apply for employment at CCL through the same website and sign the same Mutual Arbitration Agreement as the CCL employees at the SGC stores in this District. *Id.*, ¶ 19. This Court found that this satisfied the three elements of agency required for the second *Cray* factor for venue under § 1400(b). Ex. 22 at 6–12. For the third *Cray* factor, this Court found that CCI ratified the locations in this District based on CCI's Management Agreement because CCI signs lease agreements for SGC, and CCI advertises its locations, service packages, and job listings in this District on its website. *Id.* at 12–16. CCI's Management Agreement applies equally to ███ : CCI signs the leases for ███ as its manager. Boglioli Decl., ¶ 15. Similarly, the www.spectrum.com website is used to offer Spectrum products, identify store locations, and provide job listings for ███ . Exs. 28–30. This Court also found that CCI "and its subsidiaries, including SGC, "act as a single enterprise" so the actions of its subsidiaries are properly imputed to" CCI. Ex. 22 at 16–18. The Court concluded in *Entropic* that venue in this District was proper for CCI based on SGC and CCL's activities in this District. Under that same reasoning, if correct, ███ activities would have to be imputed to Defendants to find they have "a regular and established place of business" under § 1400(b) in the District of Colorado.

Similarly, because ███ leases five of the buildings and ███ owns the other building that makes up the Denver Campus that houses more than 4,000 employees and where the Accused Instrumentalities are designed, developed, and maintained, ███ activities would be imputed to Defendants. *See supra*, § III.F; *see also* Boglioli Decl., ¶¶ 21 and 22.

There is no basis to reach a different conclusion when determining whether venue is present in Colorado. If CCI, CCO, SMHC, CCL and SGC's activities can be imputed to each other in the

18

Eastern District of Texas then Defendants' activities along with those of non-party subsidiaries SPW, HoldCo, and SCH must also be imputed to each other in the District of Colorado. Because NovaCloud could have brought this case in the District of Colorado, the transfer analysis turns on the private and public factors.

### 2.    Private Interest Factors Favor Transfer to the District of Colorado

The private interest factors strongly favor transfer to the District of Colorado. It is a more convenient forum for party and third-party witnesses, and the bulk of the relevant evidence is in Colorado. By contrast, Plaintiff has minimal connection to this District.

### (a)    The Convenience for and Cost of Attendance for Willing Witnesses Heavily Favors Transfer to the District of Colorado

Witness convenience is "probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). The Fifth Circuit holds that "[w]hen the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *In re TikTok*, 85 F.4th at 361. The Fifth Circuit calls this an "obvious conclusion" because "it is more convenient for witnesses to testify at home[,]" and "additional distance means additional travel time[,] . . . meal and lodging expenses" and time "witnesses must be away from their regular employment." *Id.* (citing *Volkswagen II* at 315). Here, Defendants' witnesses are entirely out of state, primarily in Denver, Colorado.

Defendants' potential witnesses, including engineers with technical knowledge of the Accused Instrumentalities, product managers and employees with knowledge of the deployment of the Accused Instrumentalities, and witnesses with knowledge regarding the contracting and procurement of equipment necessary to support the Accused Instrumentalities, all reside in Colorado and work at the Denver Campus—with the furthest only 23 miles from the District of

19

Colorado courthouse. Boglioli Decl., ¶¶ 23–26. For all these witnesses, "it is more convenient []
to testify at home" in the District of Colorado. *See Volkswagen II*, 545 F.3d at 317. Traveling to
Marshall, Texas from Denver, Colorado requires at least a two-hour flight from Denver to Dallas
and then a two hour and forty five minute car ride to traverse the approximately 180 miles between
Dallas and Marshall, not including time spent traveling to and from and waiting at the airport. Exs.
31 and 32. Long travel time means witnesses will inevitably need to stay in Marshall overnight if
they were to testify at trial. Aside from the long trips to Marshall, overnight stays will greatly
disrupt the professional and personal lives for these employees while "being away from work,
family, and community." *Volkswagen II*, 545 F.3d at 317. If, however, this case is transferred to
the District of Colorado, knowledgeable witnesses can practically testify "at home." *See
Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time
when they are removed from their regular work or home responsibilities gets increasingly difficult
and complicated when the travel time from their home or work site to the court facility is five or
six hours one-way as opposed to 30 minutes or an hour.").

Although certain of Defendants' witnesses with knowledge of finance and marketing issues
are in Stamford, Connecticut, Denver is still more convenient for these out-of-state witnesses as
they can use the offices at the Denver Campus to minimize the inconveniences caused by being
away from their home offices and can more easily fly to Denver than fly to Dallas and then drive
two hours an forty five minutes to Marshall, Texas. Boglioli Decl., ¶¶ 21, 22, 27, and 28; Exs. 31
and 32. Save for this small number of potential out-of-state witnesses, the vast majority of
Defendants' witnesses relevant to this case are located in the District of Colorado. *See supra*,
§ III.F.

The convenience of NovaCloud's witnesses also favors transfer to the District of Colorado.

20

NovaCloud is a Delaware limited liability company located in Palo Alto, California. *See supra*, § III.D. NovaCloud identifies no witness located in this District and both named inventors are located in San Francisco, California. Traveling to Marshall, Texas from San Francisco requires at least a three and a half hour flight from San Francisco to Dallas and then a two hour and forty five minute car ride to traverse the approximately 180 miles between Dallas and Marshall. Exs. 32 and 33. By contrast, traveling to Denver from San Francisco requires a two and a half hour flight from San Francisco to Denver and then a thirty minute car ride to traverse the approximately 22 miles between the Denver airport and the courthouse. Exs. 34 and 35. Therefore the District of Colorado is more convenient for NovaCloud's witnesses.[8]

Given that a significant number of potential party witnesses will greatly benefit from having this case tried in the District of Colorado transfer is appropriate. *See In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (finding transfer appropriate when the defendant "identified a significant number of its own employees as potential witnesses who reside in the [transferee venue]"); *In re TikTok*, 85 F.4th at 361–62 & n.9 (holding that "[t]he presence of one Texas witness cannot overcome the immense inconvenience that the majority of relevant witnesses would face if this case were to be tried in Texas"); *see also In re Tracfone Wireless, Inc.*, 852 F. App'x 537, 539 (Fed. Cir. 2021) (finding that the convenience of witnesses favored transfer where "several of [defendant]'s likely employees resid[ed] in the transferee venue"). This most important factor strongly favors transfer.

### (b)    Availability Of Compulsory Process Favors Transfer

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses. *Volkswagen II*, 545 F.3d at 315. Rule

---

[8] San Francisco is approximately 1,880 miles from Marshall, but only 1,200 miles from Denver. Exs. 36 and 37.

45 of the Federal Rules of Civil Procedure permits a court to subpoena witnesses to attend trial, but that subpoena power is limited to "within 100 miles" of the courthouse or "within the state" if the witness resides, is employed, or regularly transacts business in person within the state. Fed. R. Civ. P. 45(c)(1)(A). Only two third-party witnesses are located in Texas—the lawyer who prosecuted U.S. Patent No. 8,949,206 and ▮▮▮▮▮▮▮▮▮▮▮ a third-party supplier of products used in the Accused Instrumentalities. Exs. 13 and 16. While the lawyer is located in this District, he is not within 100 miles of the Court. Exs. 16 and 18. Further, ▮▮▮▮▮▮▮▮▮ is not located in this District and is more than 100 miles from the Court. Exs. 13 and 14. Therefore the Court does not have absolute subpoena power over these witnesses. *See* Fed. R. Civ. P. 45(c)(1)(A); *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013) ("Absolute subpoena power means the power to compel attendance at both depositions and trial." (citing *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1337–38 (Fed. Cir. 2009))). The rest of the third parties that supply products used in the Accused Instrumentalities—▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮—are not located in Texas. Boglioli Decl., ¶ 33; Exs. 7, 9, 11, and 12. The two lawyers who prosecuted the other two Asserted Patents are not located in Texas. Exs. 15 and 17. Because these third parties do not reside in Texas and would incur substantial expense by complying with a subpoena from this Court, the Court lacks the power to command them to attend trial in Marshall. *See Potter v. Cardinal Health 200, LLC,* No. 2:19-cv-00007, 2019 WL 2150923, at *3 (E.D. Tex. May 16, 2019) ("[A] district court has subpoena power over residents of the state in which the district court sits . . . non-party residents can be . . . compelled as long as their attendance would not result in 'substantial expense.'"). Further, third parties ▮▮▮▮▮▮▮▮▮ are located in the District of Colorado and within 100 miles of the courthouse, giving the District of Colorado absolute subpoena power over them. Exs. 7–10. By contrast, this Court does not have absolute

22

subpoena power over any third-party witness. "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses than the transferor district." *Uniloc 2017 LLC v. Google LLC,* Case No. 2:18-cv-00504-JRG-RSP, 2020 WL 3064460, at *4 (E.D. Tex. June 8, 2020) (citations omitted). This factor strongly weighs in favor of transfer.

(c)    <strong>Ease of Access to Sources of Proof Strongly Favors Transfer</strong>

In balancing this factor, courts consider "whether the proposed transferee venue will allow more convenient access to the evidence." *Volkswagen II*, 545 F.3d at 316. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Relevant documents are maintained at the Denver Campus and not in the Eastern District of Texas. Boglioli Decl., ¶¶ 30–32. Custodians with key documents related to the technical aspects, operations, procurement, and business of the Accused Instrumentalities are located in the Denver area. *Id.*, ¶¶ 23–26. The Court must consider the location of these "document custodians, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

The Complaint identifies no relevant sources of proof in this District. While NovaCloud points to four SGC operated locations in this District, none of these locations are involved in developing or maintaining the Accused Instrumentalities. Instead they are customer-facing retail stores and do not house, or have access to, technical documents related to the Accused Instrumentalities. Boglioli Decl., ¶¶ 36–39. The personnel at these stores are not involved with the design or development of the Accused Instrumentalities. *Id.* Employees knowledgeable about technical operations related to the Accused Instrumentalities and their documents are located at the Denver Campus and/or in Colorado. *Id.,* ¶¶ 23, 30 and 31. Because it is far easier to access the

23

relevant sources of proof from the District of Colorado than from this District, this factor strongly weighs in favor of transfer.

### (d)    There Are No Practical Problems With Transferring This Case

This last private factor permits the Court to consider issues that relate to "making trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. This Court has stated that its "experience is a 'permissible consideration[ ]' in 'ruling on a motion to transfer venue,' but it does not carry much weight." *R2 Sols. LLV v. Databricks Inc.*, Civil Action No. 4:23-CV-1147, 2024 WL 4932719, at *5 (E.D. Tex. Dec. 2, 2024) (citation omitted). When this case was filed, this Court did not have any cases pending where at least one of the Asserted Patents is at issue.[9] There is no judicial economy here that weighs against transfer. *See S*QIP, LLC v. Cambria Co., LLC*, 728 F. Supp. 3d 447, 456 (E.D. Tex. 2024) (finding that lawsuits commenced by one party in a different district in the same state that did not involve the counterparty or the patents at issue in the case did not weigh against transfer).

Additionally, this case is at its nascent stage—the pleadings are not closed and no discovery has been conducted. Thus, this factor also weighs in favor of transfer.

### (e)    NovaCloud Lacks Any Meaningful Connection to This District

Though not an independent private factor, courts recognize that a plaintiff's choice of forum may be due some deference in the transfer analysis. But where, as here, almost none of the witnesses, and none of the evidence or other sources of proof are within this District, and the Eastern District of Texas is not NovaCloud's home forum, NovaCloud's choice of forum should

---

[9] NovaCloud has filed two other patent infringement cases in this District but neither claims infringement of any of the Asserted Patents. *NovaCloud Licensing, LLC v. Microsoft Corp.*, 2:25-cv-01228-DRG-RSP (E.D. Tex.); *NovaCloud Licensing LLC v. International Business Machines Corp.*, 2:25-cv-00700-DRG-RSP (E.D. Tex.). Similarly, no claim construction orders have yet issued in those cases.

be given minimal consideration. *See Greiner v. Am. Motor Sales Corp.*, 645 F. Supp. 277, 279 (E.D. Tex. 1986); *TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 459 (N.D. Tex. 2017) ("[W]hen a plaintiff is not a resident of the chosen forum, or when the operative facts underlying the case did not occur in the chosen forum, a court gives less deference to a plaintiff's choice.") (cleaned up). Accordingly, all the private factors weigh in favor of transfer.

### 3.    The Public Interest Factors Also Weigh in Favor Of Transfer

### (a)    Court Congestion Does Not Weigh Against Transfer

The first public interest factor considers "the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech*, 566 F.3d at 1347. But the Federal Circuit has held that the relative time to trial is "the most speculative of the factors bearing o[n] the transfer decision" and entitled to no "particular significance" and is especially where the other relevant factors support transfer or are neutral. *In re Juniper Networks, Inc.,* 14 F.4th 1313, 1322 (Fed. Cir. 2021) (some quotation marks omitted). Based on statistics for cases filed after January 1, 2008, the median time to jury trial in patent cases in the District of Colorado is 34.3 months, and 23.5 months for this District. Exs. 38 and 39. While time to trial is faster in this District than in the District of Colorado, NovaCloud is a non-practicing entity and this Court has noted that the "Federal Circuit has counseled against drawing such a conclusion when, as here, the patentee 'is not engaged in product competition.'" *Optimum Imaging Techs. LLC v. Sony Corp.,* Civil Action No. 4:23-cv-928, 2025 WL 904380, at *8 (E.D. Tex. Mar. 25, 2025). When "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech, Inc.*, 566 F.3d at 1347. Given that this case is in its infancy, the potential efficiencies to be gained by transfer, and the locations of nearly all relevant witnesses and sources of proof, the relatively faster time-to-trial in this Court should not weigh against transfer. Thus, this factor is neutral at best.

**(b)      The District of Colorado Has a Strong Local Interest in This Dispute**

This District has no interest in protecting NovaCloud's patents because NovaCloud lacks adequate connection to this district and the patented subject matter was not conceived or developed in this District. And because the Accused Instrumentalities are not developed here either and the Court has absolute subpoena power over only one potential witness, this District has negligible local interest in this case. The District of Colorado, on the other hand, has a strong local interest in this case, "because the cause of action calls into questions the work and reputation of [] individuals residing in or near that district." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2008). The Denver Campus is a "technology hub," and it houses more than 4,000 employees. Boglioli Decl. at ¶ 22. Further, third parties Ateme and MediaKind are located in the District of Colorado, and are thus subject to the absolute subpoena power of the District of Colorado. Exs. 7– 12.

The relevant personnel, document custodians, and ongoing activities relating to the Accused Instrumentalities are all primarily located in the District of Colorado. The strong link between the Accused Instrumentalities and Denver means the District of Colorado has a profound local interest and significant connection to the underlying events that gave rise to this action, whereas this District has no connection to the development or design of the Accused Instrumentalities. *See In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (holding the Northern District of California had "a legitimate interest in adjudicating" infringement because the accused products were developed in the district).

This District, on the other hand, has little interest in protecting NovaCloud's patents or any other interest in this case, given NovaCloud's minimal connection to this District. Moreover, NovaCloud's general infringement allegations in its Complaint have no specific ties to this District

26

that could also not be drawn to any other districts where the Accused Instrumentalities are provided. *See Volkswagen II*, 545 F.3d at 318 (noting connections that "could apply virtually to any judicial district or division in the United States" "leaves no room for consideration of those actually affected—directly and indirectly—by the controversies and events giving rise to a case"). Here, because the District of Colorado has a far stronger local interest in this case than this District, the case should be decided there. This factor strongly favors transfer.

### (c) The Factors Considering Familiarity with Governing Law and Potential Conflicts of Law are Neutral

Courts should consider "the familiarity of the forum with the law that will govern the case" and "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Volkswagen I*, 371 F.3d at 203. Patent infringement actions are governed by federal law and all relevant district courts are familiar with federal patent law. Therefore, this District and the District of Colorado are equally capable of adjudicating the patent issues in this case. *See Orinda Intell. Props. USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-CV-323, 2009 WL 3261932, at *4 (E.D. Tex. Sept. 29, 2009). Likewise, no conflicts of law exist in this case. These factors are neutral.

### C. NovaCloud's Induced Infringement Claims for Each of The Asserted Patents Should Be Dismissed Because NovaCloud Fails to Adequately Plead a Specific Intent To Induce Infringement

To state a claim for induced infringement, "a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Mullen Indus. LLC v. Samsung Elecs. Co.*, No. 2:24-CV-00049-JRG, 2025 WL 1658927, at *3 (E.D. Tex. June 11, 2025). "Generic allegations that [defendants] provide instructional materials along with accused products, without more, are insufficient to create a reasonable inference of specific intent for purposes of an induced infringement claim." *Stragent, LLC v. BMW of N. Am., LLC*, No. 6:16-

27

CV-446-RWS-KNM, 2017 WL 2821697, at \*9 (E.D. Tex. Mar. 3, 2017), *report and recommendation adopted,* No. 6:16-CV-00446-RWS, 2017 WL 2832613 (E.D. Tex. Mar. 27, 2017). Here, NovaCloud alleges on "information and belief" that Defendants are "providing information and instructions on the use of the Accused Instrumentalities[;] providing information, education and instruction to customers; providing the Accused Instrumentalities to [its] customers; and indemnifying patent infringement within the United States." Compl., ¶¶ 33, 46, and 59. The Complaint does not set out any non-conclusory allegations that any defendant knew of the Asserted Patents. *Cf. id.*, ¶¶ 32, 45, 58. In fact, NovaCloud's claims are identical to Headwater Research LLC's claims against Defendants in five other cases currently pending in this Court.[10]

| Complaint, ¶¶ 33, 46, and 59 | *Headwater Research LLC v. DISH Network Corp. et al*, 2:25-cv-00902-JRG-RSP, Dkt. 22, Am. Compl., ¶¶ 49, 61, 73, 85, 97, 109, 121[11] |
|---|---|
| Spectrum continues to actively encourage and instruct its customers to use and integrate the Accused Instrumentalities in ways that directly infringe the [Asserted Patents]. Spectrum does so knowing and intending that its customers will commit these infringing acts. Spectrum also continues to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the [Asserted Patents], thereby specifically intending for and inducing its customers to infringe the [Asserted Patents] through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused | Defendants continue to actively encourage and instruct their customers to use and integrate the Accused Instrumentalities in ways that directly infringe the [Asserted Patents]. Defendants do so knowing and intending that their customers will commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the Accused Instrumentalities, despite its knowledge of the [Asserted Patents], thereby specifically intending for and inducing their customers to infringe the [Asserted Patents] through the normal and customary use of the Accused Instrumentalities. On information and belief, these acts include providing information and instructions on the use of the Accused |

[10] NovaCloud and Headwater are represented by the same counsel. *Compare* Compl. at 16, *with* 2:25-cv-00902-JRG-RSP, Dkt. 22 at 30.

[11] *See also Headwater Rsch. LLC v. Charter Commc'ns, Inc.*, 2:25-cv-00904-JRG-RSP, Dkt. 13, Am. Compl., ¶¶ 44, 55, and 66; *Headwater Rsch. LLC v. DISH Network Corp.*, 2:25-cv-00907-JRG-RSP, Dkt. 19, Am. Compl., ¶¶ 44, 55, and 66; *Headwater Rsch. LLC v. DISH Network Corp.*, 2:25-cv-00920-JRG-RSP, Dkt. 18, Am. Compl., ¶¶ 42, 54, 66; and *Headwater Rsch. LLC v. DISH Network Corp.*, 2:25-cv-00921-JRG-RSP, Dkt. 18, Am. Compl., ¶¶ 45, 56, and 68.

28

| Instrumentalities[;] providing information, education and instructions to its customers; and indemnifying patent infringement within the United States. | Instrumentalities; providing information, education and instructions to their customers; and indemnifying patent infringement within the United States. |
|---|---|

These generic allegations are not enough to adequately plead induced infringement.

**D.     NovaCloud's Contributory Infringement Claims for Each of The Asserted Patents Should Be Dismissed Because NovaCloud Fails To Plead "No Substantial Non-Infringing Use"**

"To establish contributory infringement, [NovaCloud] must show . . . that the [Accused Instrumentalities have] no substantial noninfringing uses." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35 U.S.C. § 271(c)). "The plaintiff must do more than say 'if you use this device to perform the patented method, the device will infringe and has no noninfringing uses.'" *Lone Star Tech. Innovations, LLC v. ASUSTeK Computer Inc.,* No. 6:19-CV-00059-RWS, 2020 WL 6803249, at *4 (E.D. Tex. Jan. 14, 2020); *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-CV-507, 2015 WL 11118110, at *5 (E.D. Tex. Mar. 27, 2015) (complaint that did not "identify any components of the accused devices that are a material part of the invention" and did not "support a plausible inference that the accused devices or components" had non-infringing use failed to state a claim for contributory infringement). The Complaint does not set out any non-conclusory allegations that the Accused Instrumentalities have no substantial noninfringing uses. This warrants dismissal of NovaCloud's claims of contributory infringement.

**V.     CONCLUSION**

Defendants respectfully request that the Court dismiss NovaCloud's Complaint as to CCI, CCO, CCL, and SMHC for improper venue under Rule 12(b)(3), or, alternatively, transfer under 28 U.S.C. § 1404(a) to the District of Colorado; and dismiss NovaCloud's claims for each of the Asserted Patents for induced and contributory infringement under Rule 12(b)(6).

29

Dated: March 13, 2026

Respectfully submitted,

*/s/ Elizabeth A. Long*

Deron R. Dacus
State Bar No. 00790553
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
Email: ddacus@dacusfirm.com

Daniel L. Reisner
NY Bar No. 2685543
Elizabeth A. Long
NY Bar No. 4125209
Rebecca D. Maller-Stein
NY Bar No. 5416805
Jerrit Yang
NY Bar No. 5929997
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York, 10019-9710
Phone: (212) 836-8000
Fax (212) 836-8689
Email: daniel.reisner@arnoldporter.com
Email: elizabeth.long@arnoldporter.com
Email: rebecca.maller-stein@arnoldporter.com
Email: jerrit.yang@arnoldporter.com

***Attorneys for Defendants Charter Communications Operating, LLC, Charter Communications, Inc., Charter Communications, LLC, Spectrum Gulf Coast, LLC, and Spectrum Management Holding Company, LLC***

30

## CERTIFICATE OF CONFERENCE

I hereby certify that the parties personally conferred by telephone on March 4, 2026 regarding Defendants' intent to file a Motion to Dismiss for Improper Venue Under Rule 12(b)(3), or, in the Alternative, Transfer Under 28 U.S.C. § 1404(a) of the Federal Rules of Civil Procedure, and Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

*/s/ Elizabeth A. Long*
Elizabeth A. Long

31

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via email on March 13, 2026.

/s/ Elizabeth A. Long
Elizabeth A. Long